UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
UNITED STATES OF AMERICA,

    -against-

ANTONIO QUINONES, also known as
"Tony," and HERMAN QUINONES,

              Defendants.
---------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 06-CR-845 (S-2) (FB)

*Appearances:*

| *For the United States:* | *For Defendants:* |
|---|---|
| LORETTA E. LYNCH, ESQ. | ANTONIO QUINONES, *pro se* |
| United States Attorney | 61762-004 |
| Eastern District of New York | FCI Estill Satellite Camp |
| 271 Cadman Plaza East | Post Office Box 699 |
| Brooklyn, New York 11201 | Estill, South Carolina 29918 |
| | |
| By: STEVEN J. MEYER, ESQ. | HERMAN QUINONES, *pro se* |
|      Assistant United States Attorney | 2731 S.W. 140th Avenue |
| | Miami, Florida 33175 |

**BLOCK, Senior District Judge:**

        Antonio and Herman Quinones were convicted of distributing controlled substances. Antonio was also convicted of conspiring to distribute controlled substances and to launder the proceeds of the distribution. Their convictions were affirmed on appeal. *See United States v. Quinones*, 635 F.3d 590 (2d Cir. 2011); *United States v. Quinones*, 417 F. App'x 65 (2d Cir. Mar. 29, 2011).[1]

---

[1] The Second Circuit addressed two issues on appeal in a published opinion, and the remainder in a summary order. The Supreme Court declined to review either. *See Quinones v. United States*, 132 S. Ct. 830 (2011) (mem.).

Both defendants move, pursuant to Federal Rule of Criminal Procedure 33, for a new trial based on newly discovered evidence. For the following reasons, the motions are denied.

I

**A. Trial Proceedings**

The charges against defendants stemmed from their operation of "Internet pharmacies," through which visitors to a website would fill out online questionnaires and a brief medical history. The questionnaires were then forwarded to doctors in Puerto Rico, who would write prescriptions for phendimetrazine and phentermine. The prescriptions were filled by pharmacies in Queens and elsewhere, and shipped to customers. Customers paid by credit card, with the proceeds ultimately going to bank accounts held by defendants.

Although phendimetrazine and phentermine are controlled substances, they may be lawfully distributed with a valid prescription. To be valid, the prescription "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). The government's theory was that the distribution undertaken by defendants' Internet pharmacies deviated from the usual course of professional practice, principally because it did not allow sufficient personal interaction to give rise to a *bona fide* doctor-patient relationship. The Second Circuit succinctly set forth the government's burden of proof on that theory:

> To convict the defendants of unlawful distribution of controlled substances, the jury must have found that they knew or reasonably should have known that the doctors and

2

> pharmacists were distributing controlled substances outside the usual course of professional practice and without a legitimate medical purpose—or, in other words, that these professionals acted in "bad faith."

*Quinones*, 635 F.3d at 595; *see also id.* (quoting, with approval, the Court's instruction to the jury that it "must find the defendant [under consideration] not guilty unless the government proves beyond a reasonable doubt that the defendant knew or reasonably should have known that the doctors and pharmacists were not acting in good faith"). The circuit court found "overwhelming evidence that the defendants possessed the requisite knowledge in this case." *Id.* at 595-96.

In an attempt to refute the government's evidence of knowledge, Antonio proposed to testify that he had received advice from an attorney that Internet pharmacies were legal. Before allowing his testimony, the Court required him to disclose of the name of the attorney to the government. Antonio recalled that the advice came from "Misch and Misch," a father-and-son firm in Miami. He could not, however, remember the attorneys' first names or confirm the spelling of their last name. In addition, he could not remember the firm's address.

On the stand, Antonio testified that he was introduced to the concept of Internet pharmacies by Xiomara Garcia Nodal. He and Garcia Nodal jointly purchased a pharmacy called "Prescription and Travel" in December 2002. When Antonio first visited the business, he noticed "a lot of Fed Ex packages," Trial Tr. at 2025 (Nov. 3, 2008); the pharmacist explained that Prescription and Travel filled prescriptions submitted over the Internet by a company called "RX Networks." *Id.* at 2026. Antonio and Garcia Nodal

then went to a lawyer at Misch & Misch "to talk to him relating to that type of business." *Id.* at 2028. The lawyer later went to the pharmacy, where he "checked everything." *Id.* He told Antonio and Garcia Nodal that there was "nothing wrong, you're running a legal business." *Id.*

As noted, the Court's jury instructions incorporated the concept of reasonable reliance on the good-faith assessment of doctors and pharmacists as to what constituted the "usual course of professional practice." The instructions also informed the jury that it could find the requisite knowledge based on a theory of conscious avoidance. The Court declined, however, to include an advice-of counsel charge:

> [T]he law is clear that when you are talking about the need to show a specific intent, that the advice of counsel could be relevant, [but] when you are talking about whether somebody can rely upon a lawyer advising them as to what the law is, in the absence of dealing with a specific intent statute[,] that is something which you can't rely upon. . . .
>
> So you have those two polarities. This is not a specific intent crime. It's as simple as that.

Trial Tr. at 2460 (Nov. 5, 2008). Although the Court's ruling precluded defendants from asserting a right to rely on the advice of counsel concerning the legality of Internet pharmacies, it did not preclude them from arguing that seeking legal advice negated liability on a conscious avoidance theory:

> You certainly have the right to talk about anything that relates to the issue of whether he consciously avoided finding out what was necessary for him to know . . . . You just can't tell the jury that he had the right to rely upon the advice of counsel.

Trial Tr. at 2474-75 (Nov. 6, 2008).

4

**B. Rule 33 Motions**

Approximately five months after the trial, Antonio discovered that one of the attorneys he consulted had testified in another Internet pharmacy prosecution. From the transcript of that trial, he learned that the attorney's name was "Benjamin Metsch." He obtained affidavits from both Benjamin and his father, Lawrence.

In his affidavit, Lawrence confirmed that he met with Antonio and Garcia Nodal in late 2002 and early 2003. Lawrence advised them that "to the best of [his] knowledge, no statute, either federal or state, expressly proscribed the internet-based prescribing and dispensing of controlled medications." Aff. of Lawrence R. Metsch (Apr. 13, 2009), ¶ 7. He repeated the same advice in November 2003, when he helped Antonio comply with a subpoena issued to Prescription and Travel by a grand jury in the Eastern District of Virginia.

Benjamin's affidavit states that he received a phone call from Andrea Goldbarg, a member of the prosecution team in this case, in November 2008. Benjamin told Goldbarg that his firm had advised Antonio regarding Prescription and Travel. He then retrieved the file from storage. Benjamin states that he called Goldbarg to tell her that the file had been found, but does not state whether it was turned over to the government.

**II**

Defendants contend that Antonio's discovery of the names of the attorneys who had advised him constitutes newly discovery evidence entitling them to a new trial.[2]

---

[2] Although the Metsches' affidavits refer only to advice given to Antonio, Herman states that he served as translator when Lawrence visited the pharmacy.

"A new trial pursuant to Rule 33 based on newly discovered evidence may be granted 'only upon a showing that the evidence could not with due diligence have been discovered before or during trial, that the evidence is material, not cumulative, and that admission of the evidence would probably lead to an acquittal.'" *United States v. Owen*, 500 F.3d 83, 87 (2d Cir. 2007) (quoting *United States v. Alessi*, 638 F.2d 466, 479 (2d Cir. 1980). The Court concludes that the new trial motions here fail that test in several respects.

First, the identity of Lawrence and Benjamin Metsch is not "newly discovered." As Benjamin's affidavit attests, the government was able to locate and contact him after Antonio, as directed by the Court, provided the name "Misch & Misch." The government represents that it "conducted an Internet search of publicly available information and within a matter of minutes located a law firm in Florida with the last name Metsch." Letter Brief of Stephen J. Mayer (Feb. 12, 2012). Nothing prevented defendants from exercising the same due diligence.

Defendants do not dispute that the government was easily able to locate the correct law firm during trial. To the contrary, they argue that the failure to disclose the phone call to Benjamin violated *Brady v. Maryland*, 373 U.S. 83 (1963).[3] But "no *Brady* violation occurs if the defendant knew *or should have known* the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. Gaggi*, 811 F.2d 47, 59 (2d Cir. 1987) (emphasis added). Thus, there was no *Brady* violation for the same reason that there is no "newly discovered" evidence warranting a new trial. *Cf. United States v.*

---

[3]Although the government was able to locate the law firm, it disputes any direct communication with Benjamin.

*Sessa*, 2011 WL 256330, at *27 (E.D.N.Y. Jan. 25, 2011) ("As [defendant]'s counsel knew of the NYPD Reports, his failure to obtain them does not result in the evidence being either suppressed for *Brady* purposes or newly discovered for the purposes of Rule 33.").

Second, the evidence is not material. As the Court explained during trial, a good-faith reliance on the advice of counsel negates only a specific intent to violate the law; it is irrelevant in cases where the government is not required to prove that the defendant knew that his conduct was illegal. A distribution charge does not require such proof. *See United States v. Ansaldi*, 372 F.3d 118, 128 (2d Cir. 2004) ("Knowledge of, or intent to violate, the law is simply not an element of this offense [i.e., distribution conspiracy].")

Defendants do not challenge the Court's decision not to give an advice-of-counsel instruction. Instead, they argue that the Metsches' advice was relevant to their claimed lack of knowledge that their customers' prescriptions were being written and filled outside the usual course of professional practice. The Court doubts that that theory of relevance is sound. *See* Trial Tr. at 2462 (Nov. 5, 2008) ("THE COURT: The lawyer can't really opine about the good-faith of the doctor."). In any event, the lawyers' affidavits are, in that respect, entirely cumulative of Antonio's testimony.

Finally—and in conclusion—the Court is not persuaded that the trial would probably have ended in acquittals had the Metsches testified. Antonio gave a full account of the legal advice he sought when he purchased Prescription and Travel. The jury necessarily concluded that his account did not refute the "overwhelming evidence" that defendants knew or should have known that their operations resulted in the distribution of controlled substances outside the usual course of professional practice. There is no

7

reasonable probability that the Metsches' corroboration of Antonio's account would have led the jury to a different conclusion.

## III

Defendants' Rule 33 motions are denied.

**SO ORDERED.**

                                               _____
                                               FREDERIC BLOCK
                                               Senior United States District Judge

Brooklyn, New York
August 9, 2013